Daniels, J.
The counsel for the respondent is correct in his statement that the decision which has been announced proceeded upon a misapprehension of the facts connected with the offer and rejection of the receipt. But this misap *479 prehension did not result in any different direction from that which should be made for the disposition of the appeal. For as a matter of fact, the evidence which was given was sufficient to entitle the defendants to have the receipt received and read upon the trial. It was quite similar in its nature to that upon which the reports of the manager were allowed to be read as evidence against the defendants; and it showed such a familiarity with the handwriting of the agent whose name was attached to the receipt as to prove his signature. The evidence as to this fact was given by the vice-president of the company, who had observed the signature of Carpenter, who was the agent of the company at the mine, upon communications which were signed by him to, and acted upon by, the company. This witness had not seen Carpenter write, but that was not necessary to enable him to prove his handwriting, if he had become familiar with it in another manner; and that he had become so, appears from his evidence. His statement was that he “saw his signature to the communications, whatever they were, that accompanied the transmission of those moneys,” and the moneys he referred to were the royalties sent by Carpenter from time to time to the office of the company for the ores taken out of the mine by Mr. Greer, the lessee. The witness further testified that “the knowledge that I have is derived from haying received from Mr. Johnson the various communications from Mr. Carpenter to the company, which were usually handed to me, the date of the receipt, reading them over, and general knowledge of his handwriting.” This Mr. Johnson mentioned by the witness was the president of the company, and the communications which were received related to its business and were connected with the transmission of moneys to it, and were acted upon as the genuine statements of Mr. Carpenter, the agent. And that was sufficient within the rule applicable to proof of handwriting to enable the witness to acquire such familiarity with the signature of Carpenter as to enable him to identify and verify it. For that may be done by the witness acquiring a knowledge of the handwriting of another person by the inspection and examination of authentic documents of the description of those sent by Carpenter to the company. Upon this subject the rule is stated to be that the witness may testify to the handwriting of the person whose signature it is important to prove, “from having seen letters, bills, or other documents, pm-porting to be the handwriting of the party, and having afterwards personally communicated with him respecting them or acted upon them as his, the party having known and acquiesced in such acts founded upon their supposed genuineness; or by such adoption of them into *480 the ordinary business transactions of life as induced a reasonable presumption of their being his own writings. Greenl. Ev. [7th ed.J, § 577. And this witness was by his testimony shown to be within this latter statement of the' rule. He was brought within what the court held to be the law in Johnson v. Daverne (19 Johns., 134).
Where the statement of it was approved, that “the admissibility of the evidence must depend upon whether there is a good reason to believe that the specimens from which the witness has derived his knowledge were written by the supposed writer of the paper in question,” and that has the sanction of the case of Rogers v. Ritter (12 Wall., 317). From this knowledge and experience of the handwriting of Carpenter, the witness further testified, “the signature to the paper shown me is his signature, to the best of my knowledge. I believe it is his.” And this, in the absence of any evidence tending to discredit the statement of the witness, sufficiently authenticated the receipt to entitle it to be read in evidence.
The objection that it was not admissible under the answer, but which does not appear to have been urged upon the trial, is without foundation. For by the second subdivision of the answer, the distinct allegation is made that the sum of $3,765.71, the precise amount mentioned in the receipt, was paid to the agent by the plaintiff on the 25th day of July, 1883, the day of the date of the receipt.
The defendants as sureties for the payment of the royalties, became bound only to the extent that Greer, their principal, was in default. Neither the language of the last lease, nor the obligation or guaranty entered into by the sureties, was designed to require any more than this on their, part. What they obligated themselves to do was to become sureties for the performance by Greer of the covenants and conditions expressed in the lease, to be kept and performed by him. And while it is true that the lease stated a gross sum still in arrear from Greer, it was not designed by it to impose upon him the obligation to pay more than he was owing, but merely to require payment from him of the sum that he was in arrear to the company. The clause contained in the lease does not require that it should be so construed as to obligate Greer, or his sureties, to pay again the smn of money if it had been previously received by the company from him, as the receipt tended to prove the fact to be. A reargument of the appeal, therefore, would be of no service to the respondent, for it would still result from this state of the case that the defendants should have another trial of the action to enable them to make proof of the payment of this sum of money, which it was admitted had not been credited to Greer by the company. *481 A formal correction of the statement of facts under which the decision already announced was made, when that cannot change the result in the case, will form no legal ground for a rehearing of the appeal.
The motion should be denied, but without costs.
Beady, J., concurs._